IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NANCY VAN TASSELL,

    Plaintiff,

    v.                           Civil Action No. 05-285 ERIE

CORNELL ABRAXAS I,

    Defendant.

## OPINION

In this action plaintiff Nancy Van Tassell alleges that her former employer violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as well as the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq., when she was terminated from her position as a treatment supervisor at defendant's Marienville, Pennsylvania facility. Defendant Cornell Abraxas Group, Inc. (incorrectly identified in the Amended Complaint as "Cornell Abraxas I") ("Cornell"), a provider of treatment programs for adults and delinquent and dependent juveniles, denies discrimination was a motivating factor in its decision to terminate Van Tassell.

Presently pending before the Court is defendant Cornell's Motion for Summary Judgment (Doc. 19) and plaintiff's responses thereto. For the reasons stated herein, we will grant the motion.

## I. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment must be entered in favor

of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." Id. at 586-87 (citations omitted).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. Id., quoting Fed. R. Civ. P. 56(e); see First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co., 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 248-49 (1986).

## II. STATEMENT OF FACTS

The basic facts are not in dispute, unless otherwise noted. Van Tassell was employed at defendant's Abraxas I facility from June 1988 until her termination in February, 2005. As a treatment supervisor, a position she held beginning in September 1994, Van Tassell's primary job function was to manage the administrative, human resources and clinical activities of a treatment unit. Her job responsibilities included ensuring resident care, developing the schedule for staff, communicating performance expectations, monitoring and evaluating work activities, writing effective performance evaluations, conducting individual employee performance evaluation conferences, training, completing clinical file reviews, and developing and monitoring clinical programs.

From 1999 through 2003, Van Tassel reported to Clinical Director Fred Jefferds, who reported to Program Director James Newsome. Jefferds has characterized Van Tassell as one of his best treatment supervisor and described her as a "superstar." Jefferds retired in October, 2003.

In January 2004, Newsome hired Ralph D. Cole, Ph.D. as Assistant Program Director, a position that required Cole to supervise the Clinical Directors and all treatment supervisors, and to oversee the clinical program at the Abraxas I facility. He was also responsible for overseeing the

2

entire facility in Newsome's absence. In determining the type of skills and qualifications he would look for in a replacement for Jefferd's position, Newsome concluded he wanted to hire a candidate who, inter alia, could formalize and implement procedures and practices.

During the interviewing process, Newsome reviewed with Cole Cornell's desire for the newly-hired Assistant Program Director to focus on formalizing and implementing procedures and practices to improve Cornell's clinical programs, ensure adherence to state regulations, and enhance the overall performance and professionalism of the treatment supervisors. Thus, when hired in February 2004, in his new position Cole conducted individual, monthly "supervisory conferences" with each of the treatment supervisors to review staffing, client and performance issues. These supervisory conferences became the primary mechanism for communication between Van Tassell and Cole (as well as other treatment supervisors and Cole) concerning her job performance and Cole's expectations. Cole instructed each treatment supervisor to conduct similar monthly supervisory conferences with each of their direct reports. Cole explained how he expected the treatment supervisors to document such meetings, and emphasized that the documentation must be timely, organized, and complete. Treatment supervisors were also expected to have organized files. Cole used periodic file audits to ensure compliance with these directives.

Plaintiff's first supervisory conference was on February 23, 2004. At that time, Cole defined and discussed the supervisory relationship he expected to have with VanTassell, and she discussed her background and experience as well as her strengths and weaknesses. Van Tassel and Cole then developed professional development plans to achieve improvement in certain problem areas, including time management, dealing with employees, and completing documentation in a timely manner.

Also in early 2004, a counselor position became vacant in the Mohican dorm, where Van Tassell and Nesbitt worked. This affected Van Tassell's workload because as a treatment supervisor, she had to perform essential counselor duties in the absence of a counselor. Cole therefore temporarily transferred an additional counselor to the Mohican dorm in order to lessen Van Tassell's workload.

3

The following summary of Van Tassell's employment records is undisputed:

- The April 13, 2004 supervisory conference, Van Tassell reviewed and signed the notes from the February supervisory conference.[1] Cole and Van Tassell discussed her failure to complete her file reviews for the prior term. He explained that he would hold each treatment supervisor accountable for completion of conference notes, reports and file reviews. They also reviewed the professional development plans established at the February conference.

- At her May 19, 2004 supervisory conference, Van Tassell again reviewed and signed the notes from the prior (April) supervisory conference. She was told by Cole that she needed to make documentation more of a priority and that this area needed further improvement.

- At her June 22, 2004 supervisory conference, Van Tassell again reviewed and signed the notes from the prior (May) supervisory conference. In addition, Cole counseled Van Tassell about failing to complete both her May 2004 file reviews and the supervisory conference notes for her direct reports, as well as reviewed with her the manner in which files should be organized. He also notified her that her past due file review had to be submitted later that week. Her files (as well as files of all treatment supervisors) were audited on June 24, 2004. The audit revealed that required paperwork had not been completed and placed in the files, and the files were not properly organized.

- At her July 19, 2004 supervisory conference, after reviewing and signing the prior (June) supervisory conference notes, Cole felt it necessary to review for Van Tassell the corrective action process which would be used in the event Cornell determined that Van Tassell had developed a pattern of not completing job responsibilities.

- At her August 23, 2004 supervisory conference, Van Tassell was again informed that she had not completed all of her July supervisory conference notes on time.

- At her September 27, 2004 supervisory conference, Van Tassell was again counseled bout failing to complete her August 2004 file reviews and supervisory conference notes in a timely fashion.

- A file audit dated October 15, 2004 revealed that: Van Tassell's files were missing supervisory conference notes and other required documents; files were not properly organized; and required paperwork was not updated.

---

[1] The court assumes there was no supervisory conference in March 2004.

4

Thus, on October 26, 2004, Cole conducted a counseling session with Van Tassell, during which he reviewed her performance deficiencies, and scheduled a formal disciplinary conference for the next day. At that conference, which was also attended by Newsome, Van Tassell was issued a verbal warning for failing to meet with and/or document individual employee supervisory conferences on a regular basis and for failing to timely complete her April through September file reviews; she was warned that future similar behavior would result in further disciplinary action, up to and including termination. Cole and Van Tassell then established a plan of action to address her performance issues, which included a documented process to ensure that she organized her files by November 10, 2004. Also during this conference Newsome asked Van Tassell if she thought the work requirements were becoming too much for her to handle and suggested that she consider a different position. Van Tassell never indicated any interest in being considered for a different position or demotion. Instead, she indicated that she believed she could catch up with her failing supervisory conference requirements.

The monthly supervisory conferences continued:

● At her November 9, 2004 supervisory conference, Van Tassell reviewed and signed the October supervisory conference notes, was counseled for failing to have all files organized by the deadline, and was given two days to organize her files.

● At her December 1, 2004 supervisory conference, due to her deficient record-keeping, Van Tassell was directed to have all conference notes typed, signed and filed by December 8, 2004. Her files were audited on December 20, 2004 and Cole learned that all twelve files were missing supervisory conference notes and/or were improperly organized.

On January 6, 2005, Cole and Newsome again met with Van Tassell for a disciplinary conference, and she was counseled about the failures described supra. She was also counseled about her failure to appropriately address employee misconduct. Van Tassell admitted that although up to that point she had thought she could catch up and meet Cole's expectations, she was not able to do so. She was issued a final written warning for her continued deficient performance in the following three areas: conducting and documenting individual employee supervisory conferences on a regular basis, failure to organize supervision files, and inappropriate response to an employee's misconduct. She was told her performance would be reviewed in these three areas,

5

and if found unsatisfactory, would result in further disciplinary action up to and including discharge.

At her January 17, 2005 supervisory conference, Cole and Van Tassell established a plan to address the performance issued identified in the written warning dated January 6, 2005.

According to the defendant, on February 2, 2005, Cole learned that Van Tassell had improperly addressed a certain incident such that Cole concluded the incident had resulted from her lack of leadership skills. The next day, a file audit dated February 3, 2005 indicated that all but one of Van Tassell's files were missing supervisory conference notes, and that at least one file was improperly organized. Later that month, Cole held Van Tassell responsible for an improperly handled schedule which resulted in a shortage of staff.

On February 14, 2005, an improper schedule resulted in a shortage of staff. Cole believed that Van Tassell was ultimately responsible for the schedule and blamed her for this mistake.

Cole and Newsome then decided to terminate Van Tassell based on her continued performance problems. They met with her on February 15, 2005 to inform her of their decision. In the letter of explanation, she was told that she was terminated due to failure to meet her job responsibilities, specifically, the supervisory conferences and their documentation, organized supervision files, leadership, and inability to perform her job duties overall. Her age and sex were never mentioned during this meeting. She was 56 the day she was fired.

Van Tassell was replaced by a younger male named Daniel Patterson (D.O.B. 10/3/1970).

Prior to Dr. Cole becoming her supervisor, Van Tassell and Nesbitt shared all supervisory responsibilities for all 47 of the employees in the Mohican Dorm, as well as Shelter Care and Transitional Living. There were approximately 32 residents in these three areas. As the most experienced treatment supervisors, Van Tassell and Nesbitt had more staff members and residents for whom they were responsible than other treatment supervisors. Based on the additional responsibility, Van Tassell and Nesbitt received a higher salary than the other treatment supervisors.

When Cole first came onboard at Cornell, he and Nesbitt decided to divide the labor by assigning each employee to one particular treatment supervisor instead of both; Van Tassell was

6

assigned 27 of the 47 employees, and Nesbitt was assigned the remainder. Nesbitt's date of birth is July 27, 1967. This new division of labor also resulted in her overseeing more employees than the 7 or 8 supervised by the treatment supervisors in other dorms. Even after the division of labor, however, Nesbitt and Van Tassell remained jointly responsible for all 32 of the clients, or residents, of Mohican dorm. According to the plaintiff, after the division of labor, she remained responsible for the initial scheduling of all the employees in Mohican dorm, and Nesbitt reviewed and critiqued the schedule she created.

Plaintiff's Amended Complaint contains the following allegations to support her claim for age and gender discrimination: 1) prior to January 2004, she was consistently given high ratings on her performance evaluations; 2) prior to the time that Cole served as her immediate supervisor, Van Tassell was frequently asked to assist in programs located in Erie, Pennsylvania and Ohio; 3) shortly after Cole became her immediate supervisor, he began to criticize her performance in the areas of file reviews and supervisory conference notes, and when making these criticisms, he refused to acknowledge that she was assigned significant extra duties such as acting dorm counselor; 4) Cole did not provide direction or guidance to her in how he wanted paperwork completed and did not inform her of policy changes that affected her work, although he did provide such guidance and notice to substantially younger, male treatment supervisors; 5) Cornell violated its policy when it failed to give her the required one-day advance notice of her disciplinary conferences; 6) Cole disciplined her on October 27, 2004 even though he was aware that the counselor assistant at issue in the file audit was a recent transfer and Van Tassell had not received her supervision file; 7) when he served as her immediate supervisor, Cole failed to place her on any type of plan of action or staff development plan designed to assist her, and he failed to give her guidance, training and assistance; 8) regarding the allegations which were the subject of the January 6, 2005 disciplinary conference, Van Tassell had reported the employee's misconduct to another treatment supervisor prior to Van Tassell going on vacation and properly disciplined the employee upon her return from vacation.

Van Tassell also alleges that at the time she was fired, other substantially younger, male

7

treatment supervisors were treated more favorably in that when they had similar problems with completing paperwork, they either were not disciplined, were given the opportunity to accept demotions or transfer rather than be fired, or were provided with assistance in completing paperwork. She further alleges that after she was fired, she was replaced by a younger, male individual. Finally, she alleges that concerning her February 15, 2005 disciplinary conference, a substantially younger male was not disciplined for the scheduling problem.

At her deposition, Van Tassell admitted that Cole discussed performance issues concerning her lack of documentation, file organization and leadership abilities. She also admitted that Cole explained to her the new procedure for organizing staff files, and later gave her a checklist describing how he wanted the files done. She asserts that Nesbitt was treated differently than her because he had less of a workload, did not act as a counselor, did not go to court, and at times did not come into work at 7:00 and stay late. She also believes that the younger, male treatment supervisors were provided more guidance and notice from Cole. Specifically, Van Tassell alleges that Nesbitt received a checklist on how to organize files before she was provided the list, he was more informed than she was, she was only called into Cole's office when he wanted to criticize what she was doing, and in her opinion, three treatment supervisors (all male) were given more guidance and assistance with paperwork than she was given.

However, Van Tassell admits that the male treatment supervisors who Cornell deemed had met the requirements concerning paperwork had taken their paperwork home in order to complete it. She recalls that Nesbitt once told her that if he did not do his work at home, he would never get it done. She also admits that treatment supervisor Hansen came to work on his days off in order to keep his head above water. In fact, Jefferds, Van Tassell's immediate supervisor prior to Cole, testified that there was an expectation that salaried employees could be expected to take home work to complete it. Finally, Van Tassell admits that knowing this, she still refused to take work home or complete paperwork on her days off from work, because, according to Van Tassel, she was nevertheless "keeping [her] head up above water with what needed to be done, which is resident care." She also admits that another treatment supervisor, a female, who at some point after Cole's

8

hiring did not have her supervisory conference notes and file reviews completed, like Van Tassell was placed n disciplinary review; she further admits that after correcting her job performance, this female is still employed by Cornell. In fact, other treatment supervisors who had similar performance deficiencies as Van Tassell, sufficiently improved their performance after being warned and counseled by Cole and were not terminated.

## III. DISCUSSION

In the case at bar, Van Tassell presents no direct evidence of age or gender discrimination. Her claim must, therefore, be analyzed under the burden shifting framework provided by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[2] To make out a prima facie case under McDonnell Douglas, the plaintiff must show (1) that she was a member of the protected class; (2) that she was fired, (3) that she was qualified for the job from which she was fired, and (4) that she was discharged under circumstances giving rise to an inference of discrimination. See Berndt v. Kaiser Aluminum & Chemical Sales, Inc., 789 F.2d 253, 257 (3d Cir. 1986); Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002) (citation omitted). There is no hard-and-fast rule covering what a plaintiff must show in order to establish the McDonnell Douglas prima facie showing. Rather, "the precise elements of a plaintiff's prima facie case may vary with the particular circumstances." Waldron v. SL Indus., Inc., 56 F.3d 491, 494 n. 3 (3d Cir.1995); see also Geraci v. Moody-Tottrup Int'l, Inc., 82 F.3d 578, 581 (3d Cir.1996) ("The elements of th[e] prima facie case ... must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination.").

In Stanziale v. Jargowsky, 200 F.3d 101 (3d Cir.2000), the United States Court of Appeals for the Third Circuit explained the burden shifting framework in the context of an Age

---

[2]The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively. See Glanzman v. Metropolitan Management Corp., 391 F.3d 506, 509 n. 2 (2004).

9

Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (2000), claim:

> A plaintiff must first produce evidence sufficient to convince a reasonable factfinder as to all of the elements of a prima facie case of discrimination. If a plaintiff establishes a prima facie case, " '[t]he burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the [adverse employment decision].' " An employer need not prove, however, that the proffered reasons actually motivated the [employment] decision. If a defendant satisfies this burden, a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Id. at 105 (citations omitted).

Fuentes v. Perskie, 32 F.3d 759 (3d Cir.1994), guides us as to the burdens that an employee and an employer bear when the employer moves for summary judgment on a McDonnell Douglas claim. Once a plaintiff has made out a prima facie case, the burden of production shifts to the defendant, which must articulate a legitimate nondiscriminatory rationale for its adverse employment action. Id. at 763. This burden is "relatively light," and the employer need only "introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Id.

In order to create a genuine issue of material fact as to whether the proffered reasons are pretextual, Van Tassell must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. Van Tassell must do more than show that Cornell was "wrong or mistaken" in deciding to terminate her. Id. at 765. She must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir.2005). In other words, plaintiff Van Tassell must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.' " Fuentes, 32 F.3d at 765, citing Ezold v.

10

Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531, 533 (3d Cir.1992); Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir.1993); Chauhan v. M. Alfieri Co., Inc., 897 F.2d 123, 128 (3d Cir.1990). Fuentes instructs that pretext is not shown by evidence that "the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id. at 765.

The Third Circuit has applied the principles explained in Fuentes to require plaintiffs to present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision. See Stanziale v. Jargowsky, 200 F.3d 101, 106 (3d Cir.2000) (upholding summary judgment where the plaintiff attempted to show pretext by disputing the importance of the difference in educational qualifications between himself and the person hired rather than challenging the disparity itself or proving that the qualifications at issue bore no actual relationship to the employment being sought); Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1110 (3d Cir.1997) (en banc) (determining that summary judgment was appropriate notwithstanding the plaintiff's contention that his failure to meet or approach his goal of raising $1.5 billion in financing was due to factors beyond his control, stating that "the relevant question is not whether Keller could have done better; instead, the relevant question is whether the evidence shows that it was so clear that Keller could not have done better that ORIX Credit Alliance could not have believed otherwise").

An employer may not use evaluating criteria which lacks any relationship at all to the performance of the employee being evaluated because to do so would be inconsistent with and contradictory to the employer's stated purpose. See Fuentes, 32 F.3d at 765. Absent this type of violation of the Fuentes standard, we will not second guess the method an employer uses to evaluate its employees. See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 647 (3d Cir.1998) ("Whether sales quotas or evaluation scores are a more appropriate measure of a manager's performance is not for the court (or factfinder) to decide."); Keller, 130 F.3d at 1109 ("The question is not whether the employer made the best or even a sound business decision; it is whether the real

11

reason is discrimination."); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir.1988) ("[O]ur inquiry must concern pretext, and is not an independent assessment of how we might evaluate and treat a loyal employee."); Logue, 837 F.2d at 155 n. 5 ("[O]ur task is not to assess the overall fairness of [the] ... employer's actions.").

Determining pretext is a fact-based inquiry. See Simpson, 142 F.3d at 646. We must, therefore, look carefully at each of Cornell's proffered reasons as well as Van Tassell's claim of pretext regarding each of these reasons. See Ezold, 983 F.2d at 524-525 (concluding that a district court is obligated to focus on the employer's articulated reasons).

But first, our analysis begins with the four elements of plaintiff's prima facie case. Cornell does not dispute the first three elements, but instead, argues that Van Tassell cannot satisfy the fourth element of the prima facie standard because she has not come forward with any evidence that a similarly situated male was treated more favorably than her. We agree. The few male treatment supervisors and one female treatment supervisor who had insufficient paperwork and substandard file organization did not have the continued and repeated performance problems that Van Tassell did. Those who had problems meeting Cornell's expectations of timely completing supervisory conferences, supervision notes, and organizing files, nevertheless eventually improved their performance (and who, like plaintiff, were warned by Cole), and were not terminated.

Van Tassell argues that she was assigned more duties than Nesbitt, her fellow treatment supervisor at Mohican dorm. However, she has not shown (or alleged) that Cornell failed to discipline him for the same problems that she experienced. She also claims that unlike Nesbitt, she was required to perform duties of a counselor, in addition to her treatment supervisor duties, for an extended period of time in the latter half of 2004 until her termination in February 2005. However, the evidence shows that her dorm was assigned another part-time counselor as well as a counselor assistant, and that Nesbitt did perform counselor duties. We find that plaintiff has not shown that similarly situated male treatment supervisors were treated more favorably than she was.

Nevertheless, as to an alternative showing of her prima facie case, it is undisputed that the plaintiff was replaced by Daniel Patterson, a male who is approximately twenty years younger than

12

her. Yet we know nothing about his performance. At the same time, Van Tassell has admitted that there were no other treatment supervisors who had similar performance problems as her and those who did have certain problems sufficiently improved their performance. It is difficult to see how her being replaced by a younger male could be evidence of an inference of discrimination where she has admitted no one performed as poorly as she did and she has presented no evidence regarding the qualifications of her replacement.

We next address the burden shifting analysis which requires that, once a prima facie case has been established, Cornell must put forward a legitimate, non-discriminatory reason for Van Tassell's employment termination. Cornell has done so by showing that she was terminated due to her well-documented and continued unsatisfactory job performance in the areas described at her termination meeting, summarized at length supra. There is no doubt that Cornell has met its burden of production by showing that her poor job performance was a legitimate, non-discriminatory reason for her termination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

As described above, once the defendant meets this burden, the plaintiff must establish that the defendant's proffered reason is merely a pretext for discrimination. Id. Because Van Tassell does not rely on direct evidence, she must show that her age and/or gender were the motivating factors in Cornell's decision, by either 1) discrediting the proffered reason for her employment termination; or 2) adducing material evidence that discrimination was more likely than not a motivating or determinative cause of the employment termination. Fuentes, 32 F.3d at 763. We find that Van Tassell has done neither.

The undisputed evidence establishes that Cole (as well as Newsome) believed that Van Tassell had performance issues in the areas of conducting supervisory conferences, completing paperwork and documentation, and file organization. Cole reviewed his concerns with her at ten separate supervisory conferences in the period from April 2004 through January 2005. In fact, Van Tassell does not deny that she had problems completing these tasks as required. She was repeatedly counseled and warned that she was not meeting performance expectations and requirements. She

13

has not established a pretext by discrediting Cornell's stated reasons for terminating her.

Furthermore, Van Tassell has failed in her effort to adduce material evidence that discrimination was more likely than not a determinative cause of her termination. We find unpersuasive plaintiff's argument that her prior supervisor, Jefferds, gave her positive performance evaluations; Jefferds did not make the decision to terminate her and his favorable comments do not show that Cole's criticisms were pretextual. Ezold, 983 F.2d at 528. The fact that Van Tassell fell behind in her paperwork because she refused to work during off hours does not demonstrate that Cornell's reasons for its employment termination decision were pretext. Other treatment supervisors performed counselor duties while working as treatment supervisors, and others, including younger, male treatment supervisors, could only satisfy the paperwork requirements by taking the work home or coming into work on their days off. While it may seem unusual to ask this of employees, we must not decide if the employer made the best, or even a sound business decision; we must only decide whether the real reason was discrimination. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997). We find that it was not.

Van Tassell argues that prior to Cole becoming her supervisor, she was often asked to assist programs in other locations. However, she admits that this only happened a few times and she has not attempted to show that she was treated more or less favorably than other treatment supervisors.

Contrary to her assertions that she was unfairly overburdened, as compared to her male counterpart, the undisputed evidence shows that Cole in fact acknowledged that she had been performing counselor job duties and that he assisted in transferring a counselor to the Mohican dorm. He also gave her several months to catch up on and improve her paperwork and file organization performance. Although she may have felt that Cole did not aid her as much as he did her male counterparts, it is clear from the record that she was put on several professional development plans and plans of action in order to assist her in improving in the areas which Cole had identified as unsatisfactory.

As for Van Tassell's argument that Cornell failed to provide her the required one-day advance notice of her disciplinary conferences, she has admitted that there was in fact no policy

applicable to treatment supervisors or any salaried employee. More to the point, there is no evidence that younger and/or male treatment supervisors were treated any differently than she was in this regard.

In addition, Van Tassell alleges that she was disciplined on October 27, 2004, even though Cole knew that the counselor assistant at issue in the file audit was a recent transfer and Van Tassell had not received her supervision file. However, she admitted in her deposition that during the month of the file audit, the counselor assistant was under Van Tassell's supervision. Thus, Van Tassell should have had the supervisory conference documented and the file organized, which she knew was a requirement of her job.

Plaintiff argues that she should not have been criticized at the January 6, 2005 disciplinary conference regarding a fellow employee's misconduct. She defends her handling of the situation by stating that she had reported the misconduct to another treatment supervisor (Nesbitt) prior to going on vacation and then properly disciplined the employee upon her return from vacation. However, she testified at her deposition that she "accepted accountability for" the incident and although she may have thought someone else may have taken care of it, she acknowledged at the time that it was her responsibility. Again, we find that this does not demonstrate any inconsistency or implausibility on the part of Cornell in articulating its legitimate, non-discriminatory reason for firing her.

Van Tassell also argues that at the time she was terminated, other substantially younger, male treatment supervisors were treated more favorably than she was, because when they had similar problems with completing paperwork, they were either not disciplined, were given the chance to accept demotions or transfers as alternatives to termination, or were provided with assistance in completing their paperwork. Yet she has come forth with no evidence that any treatment supervisors had performance problems similar to her own. The evidence is clear that Cole met with her numerous times and gave her opportunities to improve, as well as outlined performance development plans specifically telling her what was needed to improve. She never replied to Cornell's inquiry of whether she was interested in a job demotion or transfer. There were treatment supervisors who took the criticisms to heart and improved their performance after being

15

counseled and warned by Cole in the same fashion as was Van Tassell. Van Tassell clearly knew what was expected of her but refused to put in the extra time to get the job done.

In summary, we find that looking at the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact that Van Tassell's termination had anything to do with her age or gender. She nas neither discredited the proffered reason for her termination, nor adduced material evidence that discrimination was more likely than not a motivating or determinative cause of her employment termination. "[T]he nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765. She has not done so.

Accordingly, the defendant's motion for summary judgment will granted and judgment will be entered in favor of the defendant.

Date: *March 31, 2008*

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Court Judge

16